IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES EDWARD WALLS, | ) | CASE NO. 1:05CV0202 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| SAMUEL TAMBI, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is James Edward Walls' ("Walls") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on February 4, 2005.  Walls is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Edward E. Walls*, Case No. CR 163254 (Cuyahoga County 1981).  For the reasons set forth below the magistrate judge recommends that the petition be dismissed.

I

The state court of appeals reviewing Walls' claims made the following findings of fact regarding the causes of his incarceration:

> Defendant was initially indicted on one count of aggravated murder under R.C. 2903.01(A) (with prior calculation and design), one count of aggravated murder under R.C. 2903.01(B) (while committing aggravated robbery), and one count of aggravated robbery under R.C. 2911.01(A)(1) and (2).  At arraignment defendant pled not guilty.

> Trial commenced on August 6, 1981.  The prosecutor adduced the following

evidence.  The coroner testified that an autopsy was performed on James C. Miller which revealed injuries to his face, head, and scalp which were sustained as a result of multiple blows from a blunt instrument.  Miller's death was a result of these impacts and simultaneous heart failure.  A trace evidence expert testified that Miller had metal traces on his right hand which were possibly consistent with holding a stairs handrail but which were inconsistent with holding a gun.  Miller also had a trace pattern around his left wrist which was consistent with a watchband.

The prosecutor also presented several witnesses who, but for minor inconsistencies in their testimony, revealed the following course of events.  The building at 5905 Euclid Avenue contained a second-floor apartment in which the custodian operated an after-hours cheat spot.  The only access to the apartment was via a door in the back of the building which opened onto a balcony/porch and stairway which descended into an alley.

Prior to the events in question, defendant and Valerie Crenshaw, a.k.a. Pee Wee, had been sharing an apartment in this building, although it was denied that they shared an intimate sexual relationship.  In any event, the two had been arguing for some time, and either defendant had ordered Pee Wee out of the apartment or Pee Wee had moved out.

On the evening of March 1, 1981, Emmett Jackson was attempting to sell a radio to obtain money for liquor.  Jackson met Miller, a white man, who was seeking to locate a black prostitute.  Jackson, hoping to persuade Miller to buy him some drinks, took Miller to the aforementioned cheat spot.

As the two men entered the cheat spot Miller became apprehensive because he was the only white person present, but Jackson reassured him.  Miller removed his wallet and bought drinks for everyone present.  Pee Wee sat on Miller's lap and he solicited sex from her.  The two arranged to meet several days later for that purpose.  Defendant, who was only a few feet away, was described as being upset about this interaction between Miller and Pee Wee.

Later that night, Jackson, defendant, and Miller left the cheat spot together.  They sold Jackson's radio, purchased some wine, and returned to the cheat spot and continued drinking.  Miller was visibly intoxicated at that time.  It was then decided that Miller would go purchase more wine, and Jackson and defendant went with him.  Up to this moment, Miller had done nothing to defendant directly to provoke any attack.  However, as the three men were descending the steps behind the building defendant suddenly grabbed Miller around the neck, dragged him down the steps, knocked him to the ground, and began beating and kicking him.  Following this attack, Pee Wee and Ann Taylor looked down from the balcony and observed Miller laying in the alley trying to get up.  Shortly thereafter, Kathy Tann, who lived in the same building on a higher

2

floor, was walking up the stairs when she observed Miller laying under the steps. When she reached the balcony where the cheat spot was located Ms. Tann announced to the people there that she was going to call the police. Jackson ran from the area and did not return. Defendant told Ms. Tann that she had better not call the police or he would hurt her.

Defendant was then seen procuring a sledgehammer. Pee Wee and Ms. Taylor, who were inside the cheat spot, heard several blows coming from outside which sounded like something hitting concrete. Groans were also heard. Between the blows Pee Wee heard defendant say "Don't get up." Shortly thereafter, defendant returned to the cheat spot with the sledgehammer, which was bloody. He told Ms. Taylor that he "had killed a honky." Defendant had a drink and went to bed.

After a while, Pee Wee awoke defendant and warned him that the police would be around. Defendant went outside and put Miller's body into the back of his (Miller's) car. Defendant and Pee Wee drove to a high school parking lot and dumped the body. Pee Wee asked defendant why he had done it and defendant replied that he didn't like Miller.

During the days that followed defendant freely admitted to several persons that he had killed Miller. Defendant showed them Miller's wallet and identification, and reported that he had taken twenty dollars from the wallet. Defendant bragged about his new car, i.e., Miller's car. Defendant told these people that he had killed Miller because he hated white people and because he was angry about the killing of black people and children during the Vietnam war.

Police officers testified that Miller's body was found in the school parking lot and that a vehicle fitting the description of Miller's car had been spotted there. Miller's wallet, money, personal papers, keys, and watch were not found on the body.

On the basis of this and other evidence defendant was found guilty of count one and count three, but was acquitted of count two. In a journal entry filed August 31, 1981, defendant received consecutive sentences of life and seven to twenty-five years, respectively.

*State v. Walls*, 1982 WL 2467 (Ohio App. July 8, 1982).

Walls timely appealed his conviction to the state appellate court. Walls asserted three

assignments of error in his appeal:

I.    APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND

3

<u>OF OHIO BECAUSE HE WAS CONVICTED ON EVIDENCE WHICH WAS INSUFFICIENT TO SUPPORT SAID CONVICTIONS</u>.

II.      <u>THE TRIAL COURT ERRED AND DENIED APPELLANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL, AS GUARANTEED HIM UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHEN IT DENIED APPELLANT'S REQUEST TO A JURY INSTRUCTION ON A LESSER INCLUDED OFFENSE</u>.

III.     <u>APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE ADMISSION OF GRUESOME, INFLAMMATORY PHOTOGRAPHS, WHOSE PREJUDICIAL EFFECT SUBSTANTIALLY OUTWEIGHED THEIR PROBATIVE VALUE</u>.

On July 8, 1982 the state appellate court affirmed the judgment of the trial court.  Walls did not appeal to the Ohio Supreme Court the state appellate court's decision.

On June 3, 1991 Walls filed a motion for postconviction relief in the trial court.[1] Upon motion of the state the trial court dismissed this motion on August 12, 1991.[2]

On January 21, 1998 Walls filed a second motion for postconviction relief in the trial court.  In his application Walls asserted that he had been denied effective assistance of appellate counsel, he had been denied effective assistance of trial counsel, the prosecutor engaged in misconduct by failing to disclose to the defense that he had made plea bargain agreements with several state witnesses, and he had been deprived of his right to due process because the prosecutor knowingly used false testimony before the grand jury and at trial.  On February 3, 1998 the trial court denied Walls' motion.  On April 7, 1999 the trial court

_____

[1]  No record exists of the claims raised in this application.

[2]  The trial court failed to enter findings of fact and conclusions of law in conjunction with the dismissal of Walls' motion.  *See State v. Walls*, 2000 WL 804620, at *2 (Ohio App. June 22, 2000).  Walls did not appeal the court's failure to enter findings of fact or conclusions of law, nor did he seek a write of mandamus to compel the court to do so.

issued findings of fact and conclusions of law with regard to this dismissal.  The court found that Walls' claim of ineffective assistance of appellate counsel was not cognizable in a motion for post-conviction relief, that his claim of ineffective assistance of trial counsel was without merit and barred by the doctrine of *res judicata*, and that his remaining two claims were barred by the doctrine of *res judicata*.

On November 12, 1998 Walls moved in the trial court to vacate his conviction pursuant to Ohio Civ. R. 60.[3]  On December 9, 1998 the trial court overruled this motion without explanation.

On May 6, 1999 Walls filed in the state appellate court a notice of appeal of the trial court's findings of fact and conclusions of law and the denial of his second motion for postconviction relief.  Walls asserted five assignments of error in support of his appeal:

I.      THE TRIAL COURT ERRED BY HOLDING THAT APPELLANT IS BARRED ON RELIEF [sic] BY DOCTRINE OF RES JUDICATA.  14th U.S. AMENDMENT.

II.     APPELLANT WAS DEPRIVED OF A DIRECT APPEAL OF RIGHT BASED UPON CONFLICT OF INTEREST OF APPEAL COUNSEL.  SIXTH AND FOURTEENTH U.S. AMENDMENT.

III.    APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT.

IV.     THE PROSECUTOR FAILED TO DISCLOSE TO DEFENSE COUNSEL THAT HE HAD MADE PLEA BARGAIN AGREEMENT'S [sic] WITH SEVERAL STATE WITNESSES.

V.      THE PROSECUTOR KNOWINGLY USED FALSE AND PERJURED TESTIMONY NOT ONLY BEFORE THE GRAND JURORS, BUT AT THE

_____

[3] Ohio Civ. R. 60 provides for relief from judgment in civil cases.  It is not applicable to criminal cases.

TRIAL.  SIXTH & FOURTEENTH U.S. AMENDMENTS.[4]

On July 20, 2000 the appellate court found that because Walls had failed to file his motion

within one year of the effective date of the act permitting a petition for postconviction relief,

had failed to file within 180 days after the trial transcript had been filed in the court of appeals,

and had failed to meet any other jurisdictional requirement which would have allowed the court

to consider Walls' motion for postconviction relief,[5] the trial court had been without jurisdiction

to consider Walls' motion.  The state appellate court held, therefore, that the trial court had

properly dismissed Walls' motion but that the court should have dismissed the motion for want

of jurisdiction.

On July 31, 2000 Walls filed a notice of appeal in the Ohio Supreme Court.  In his

memorandum in support of jurisdiction, Walls asserted the following propositions of law:

PROPOSITION OF LAW No. I.
APPEALS COURT ERROR WHEN IT FAILED TO COMPLY WITH R.C.

---

[4]  Walls filed his appeal *pro se*.  He had moved in the state court of appeals for the appointment of counsel to assist with his appeal and for the preparation of a transcript at state expense, but the appellate court denied this motion on June 3, 1999.

[5]  Ohio Rev. Code § 2953.23 provides that a court may consider an untimely application for postconviction relief if both of the following apply:

(1) Either of the following applies:
(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact-finder would have found the petitioner guilty of the offense of which the petitioner was convicted . . . .

> 2953.21 (C) WHICH PROVIDES A MANDATORY REQUIREMENT A FINDING OF FACT BEFORE DISMISSAL OF A CRIMINAL DEFENDANT'S PETITION FOR POST CONVICTION RELIEF, A REVERSIBLE ERROR.
>
> PROPOSITION OF LAW No. II.
> APPEALS COURT ERROR BY CLAIMING PERSONAL JOINT TORT FEASORS JURISDICTION TO ABROGATION PETITIONER FIRST POST-CONVICTION; WHICH IS UNCONSTITUTIONALLY EX POST FACTO PROHIBITION.
>
> PROPOSITION OF LAW No. III.
> THE TRIAL COURT ERRED BY HOLDING THAT APPELLANT IS BARRED ON RELIEF BY DOCTRINE OF RES JUDICATA. 14th U.S. AMENDMENT.
>
> PROPOSITION OF LAW No. IV.
> APPELLANT WAS DEPRIVED OF A DIRECT APPEAL OF RIGHT BASED UPON CONFLICT OF INTEREST OF APPEAL COUNSEL.  SIXTH AND FOURTEENTH U.S. AMENDMENTS.
>
> PROPOSITION OF LAW No. V.
> APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS SIXTH & FOURTEENTH AMENDMENT RIGHTS.
>
> PROPOSITION OF LAW No. VI.
> THE PROSECUTOR FAILED TO DISCLOSE TO DEFENSE COUNSEL THAT HE HAD MADE PLEA BARGAIN AGREEMENT'S WITH SEVERAL STATE WITNESSES.
>
> PROPOSITION OF LAW No. VII.
> THE PROSECUTOR KNOWINGLY USED FALSE AND PREJURED TESTIMONY NOT ONLY BEFORE THE GRAND JURORS, BUT AT THE TRIAL.  SIXTH AND FOURTEENTH U.S. AMENDMENTS.

(Errors in locution, spelling, and punctuation in the original.)  On October 25, 2000 the Ohio Supreme Court declined jurisdiction over Walls appeal as not involving any substantial constitutional question.

Walls filed a petition for a federal writ of habeas corpus in this court on February 4, 2005.  Walls asserts four grounds for relief:

7

A.      Ground one:  The trial court errored by holding that appellant is barred on relief by doctrine of res judicata;  6th & 14th Cont. Amend. & 8th & 13$^{th.}$

B.      Ground two:  Appellant was deprived of a direct appeal of right based upon conflict of interest of appeal counsel;  6th & 14th Cont. Amend.

C.      Ground three:  Appellant was deprived of effective assistance of trial counsel in violation of 5th 6th &  14th  U.S. Constitutional Amendments & 8th.

D.      Ground four:  The prosecutor failed to disclose to defense counsel that he had made plea bargain agreements with several state witnesses. & 5th 8th 14th.

E.      Ground five:  The prosecutor knowingly used false and perjured testimony not only before the grand jurors, but at the trial. 5th 6th & 8th 14th U.S. Constitutional Amendments.

F.      Ground sixth:  Appeals court error when it failed to comply with R.C. 2953.21(C) which provides a mandatory requirement of finding of fact & conclusion of law before dismissal of a criminal defendant's petition for post-conviction relief.

G.      Ground seventh:  Appeals court error by claiming personal joint tort feasors jurisdiction to abrogation of petitioner's first post conviction relief, which is unconstitutionally ex post facto prohibition.

(Spelling, capitalization, and punctuation altered from the original).   On July 5, 2005 respondent moved to dismiss Walls' petition (Docket #11).  On August 8, 2005 Walls filed a "Motion to Amend Thus to Conformed to the Evidence" ("Pet. mot."; Docket #12), which the court construes as an opposition to respondent's motion and a motion to amend the petition. The court grants Walls' motion to amend the petition and will consider the matter contained in his motion as part of his petition.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

Petitioner was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio. Petitioner filed his writ of habeas corpus in the Northern District of Ohio and raises claims

8

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  This court has jurisdiction over petitioner's claims.

*B.  Statute of Limitations*

Respondent argues that Walls' petition is barred by the statute of limitations.   The

Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244 limits

the time within which a person in custody pursuant to the judgment of a state court may file a

petition for a federal writ of habeas corpus:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Walls was sentenced on August 31, 1981, and he filed a timely direct appeal of his

conviction and sentence.  The state appellate court denied Walls' appeal on July 8, 1982.

Walls did not appeal to the Ohio Supreme Court the state appellate court's denial of his appeal.

The AEDPA took effect on April 24, 1996.  Judgments entered before the effective date of the AEDPA enjoyed a one-year "grace period" before they were barred by the statute of limitations.  *See Brown v. O'Dea*, 187 F.3d 572, 576 (6th Cir. 1999).  Walls' limitations period began to run, therefore, on April 25, 1996, and it expired after April 24, 1997.  Walls did not file any pleading in state court which might have tolled the statute of limitations after the AEDPA took effect until January 21, 1998, when he filed his second motion for postconviction relief.  Walls filed his petition in this court for a writ of habeas corpus on February 4, 2005.  Walls petition is barred, therefore, by the statute of limitations.

Walls argues that the statutory period should be tolled because various state-created impediments prevented him from timely filing his petition.  *See* Pet. mot. at 3-11.  Many of these arguments go to the merits of Walls' case and not to the issue of whether state action prevented him from filing a petition for a writ of habeas corpus.[6]  Other arguments reference events which occurred well after the expiration of Walls' limitation period on April 25, 1997 and are, therefore, irrelevant to whether he could have filed his petition *before* that date.[7]  Walls

---

[6]  *See e.g.* Walls' argument that the appointment of ineffective trial counsel was a state-created impediment to filing his petition.  Pet. mot. at 3-6.

[7]  *See e.g.* Walls' discussion of the state appellate court's decision of June 22, 2000.  Pet. mot. at 6-7.  *See also* Walls' allegations of a series of events beginning on August 22, 2000 and continuing until October 1, 2004 which, according to Walls, constituted state-created impediments to Walls' filing a petition for a federal writ of habeas corpus.  *Id.* at 9-11.  Even if Walls' allegations are true, the statutory period had expired well before the alleged events occurred.

provides no competent evidence to support the existence of any state-created impediment existing between April 24, 1996 and April 25, 1997 which prevented him from filing a petition for a federal writ of habeas corpus.  In the absence of such evidence the court declines equitably to toll the statutory period.

III

For the reasons given above the magistrate judge recommends that the court dismiss Walls' petition for a writ of habeas corpus.


Date:  August 15, 2005                    /s/Patricia A. Hemann
                                          Patricia A. Hemann
                                          United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).